IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br><br>BankUnited Financial Corporation, *et al.*,<br><br>                        Debtors. | Chapter 11<br><br>Case No. 09-19940-LMI<br><br>(Jointly Administered) |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF BANKUNITED FINANCIAL CORPORATION, *et al.*,<br><br>      Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for BankUnited, FSB,<br><br>      Defendant. | Adversary Proceeding<br>No. 10-03075-LMI |

**MEMORANDUM OF LAW OF THE FEDERAL DEPOSIT
INSURANCE CORPORATION, AS RECEIVER FOR BANKUNITED FSB,
<u>IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

The Federal Deposit Insurance Corporation (the "FDIC-R"), as Receiver for BankUnited FSB ("BankUnited" or the "Bank"), submits this memorandum of law in opposition to the Motion for Summary Judgment filed July 16, 2010 [Adv. Pro. Dkt. No. 14] (the "Motion") by the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors, including the Bank's holding company, BankUnited Financial Corporation ("BUFC" or the "Holding Company"), and in further support of the FDIC-R's Motion for Summary Judgment filed on July 16, 2010 [Adv. Pro. Dkt. No. 12], which is incorporated herein by reference.

61090207_4

## **PRELIMINARY STATEMENT**

Under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") and the law in this Circuit, the Committee's Proposed Claims against Proposed Defendants Camner and Lopez – the former CEO and CFO, respectively, of both the Bank and Holding Company – are derivative Bank claims owned exclusively by the FDIC, as receiver for the Bank. As set forth in the Committee's Proposed Complaint, and confirmed in the Committee's Motion, each of the claims rises and falls with the Proposed Defendants' mismanagement of <u>the Bank</u> with respect to <u>the Bank's Option ARM portfolio</u>, which resulted in the failure of <u>the Bank</u> and thus, derivatively and necessarily, injured the Holding Company. Under *In re Southeast Banking Corp.* – clear precedent in this Circuit on the exact question at hand – the claims are derivative and belong exclusively to the FDIC-R because they "turn on acts taken by, and injury" to the Bank. *See In re Southeast Banking Corp.* 827 F. Supp. 742, 744, 746 (S.D. Fla. 1993), *rev'd in part on other grounds,* 69 F.3d 1539 (11th Cir. 1995). Specifically, *Southeast Banking Corp.* recognized FIRREA's mandate by holding that:

(i) claims which "turn on acts taken by, and injury to, the Bank" are "classic derivative claims" that "can only be asserted by the successor in interest to the Bank, the FDIC," *id.* at 746; and

(ii) a narrow "sliver" of claims belonging to the holding company (that fall outside of FIRREA's mandate) can only arise from transactions wholly unrelated to the subsidiary bank, which cause "distinct harm" suffered only by the holding company, *id.*

Faced with seventeen years of controlling law, the Committee finds itself in a quandary to justify its entitlement to the claims. Further complicating its predicament is the recent unpublished *Lubin* decision in the Eleventh Circuit that is entirely consistent with *Southeast Banking Corp.* and with the FDIC-R's position. *See Lubin v. Skow*, Nos. 10-10011, 10-10068, 2010 WL 2354141 (11th Cir. Jun. 14, 2010). Instead of "throwing in the towel," the Committee

61090207_4

"throws a Hail-Mary pass": (1) failing to analyze and apply the relevant standard articulated in *Southeast Banking Corp.*; (2) claiming that *Lubin* supports their position; and (3) relying on *General Rubber Co. v. Benedict*, 215 N.Y. 18, 109 N.E. 96 (1915), a New York State case decided nearly a century ago, long before FIRREA. The Committee's "Hail-Mary" cannot stave off defeat as none of these efforts are availing.

The Committee looks to *Lubin* and hypothesizes that "even if the *Southeast Banking* case could be construed in the manner advocated by the FDIC[-R] . . . it would be inconsistent with Eleventh Circuit precedent." (Motion ¶ 64.) This is wishful thinking. In *Lubin,* the court affirmed the dismissal of each and every claim of the holding company trustee against former officers and directors of the holding company and its bank subsidiary. Indeed, FDIC-R cited *Lubin* in its own summary judgment motion precisely because this latest Eleventh Circuit decision adds yet further support to the FDIC-R's position that it exclusively owns the Committee's Proposed Claims.

Similarly, instead of embracing *Southeast Banking Corp.* – which is directly on point (as this Court and even the Committee have previously recognized) – the Committee now makes an about-face, questioning "*Southeast Banking Corp.*'s reliability as authority supporting the FDIC[-R]'s position." (Motion ¶ 62.) In its place, the Committee turns to *General Rubber*, a case which was considered, addressed and incorporated in *Southeast Banking Corp.* The Committee misinterprets both *Southeast Banking Corp.* and *General Rubber*, attempting to create disharmony where there is none.

Accordingly, pursuant to FIRREA and relevant case law in this Circuit, the Committee's claims, which turn on acts taken by and injury to the Bank – the Holding Company's "primary"

wholly owned subsidiary and "most valuable asset" (Proposed Compl. ¶ 171) – are classic derivative claims which belong exclusively to the FDIC-R.

## ARGUMENT

### I.  FIRREA and *Southeast Banking Corp.* Require Judgment in the FDIC-R's Favor.

In enacting FIRREA, Congress did more than unambiguously delegate the power to assert derivative claims to the FDIC-R; it eliminated any right of others, such as the Committee, to assert claims relating to the failed institution or its assets by making the FDIC-R the legal successor, conveying to it, among other things, all rights "of any stockholder." 12 U.S.C. § 1821(d)(2)(A)(i). Accordingly, by operation of law, the FDIC-R – and not the Committee – is the only proper party entitled to assert derivative claims for the benefit of all depositors, shareholders and creditors of the Bank. *See id.*

*Southeast Banking Corp.*, which is directly on point, sets forth the standard for determining whether claims asserted against officers and/or directors of a holding company and subsidiary bank are direct or derivative, providing that where "[t]here is no meaningful distinction between injury suffered by the holding company and the derivative claims of mismanagement," the claims are derivative claims belonging exclusively to the FDIC-R. 827 F. Supp. at 746.[1] This is especially true where the holding company's "solvency and success were 'crucially dependent' on the Bank." *Id.* at 746, 753.

---

[1] This "no meaningful distinction" standard seems the only practicable solution for dealing with claims against bank principals serving as officers and directors of both the holding company and its primary wholly owned subsidiary, the bank. This is so because of the impossibility of distinguishing between what they do while wearing one hat or the other. In the BankUnited context, this practical problem becomes all the more severe with a principal like Proposed Defendant Camner, who wore three hats – as the person running the Holding Company, the Bank, and the law firm serving them both – as well as Chairman of the Board of Directors of both the Holding Company and the Bank. The other Proposed Defendant, Lopez, wore two of the three hats –

(Footnote continued on next page)

In its Motion, as in the Proposed Complaint – where the Committee references the Bank more than 175 times – the Committee is unable to escape the fact that its claims turn on the acts taken by the Proposed Defendants, as senior officers of the Bank, in mismanaging <u>the Bank</u> with respect to <u>the Bank's Option ARM portfolio</u>, that resulted in injury to <u>the Bank</u> and, derivatively and necessarily, injury to the Holding Company. (*See generally* Motion.) Specifically, the Committee concedes in its Motion that its Proposed Complaint:

- "avers that the Proposed Defendants . . . caus[ed] or permit[ted] BUFC to engage in <u>unsafe and unsound practices</u> (including the failure to exercise proper oversight <u>with respect to</u> its primary asset [<u>the Bank</u>]) that <u>led to the closing of the Bank</u> and the bankruptcy of BUFC" (Motion ¶ 27) (emphases added);

- "avers that, despite the issuance of regulatory guidances, policy statements and directives [<u>to the Bank</u>] regarding the necessity to . . . maintain . . . effective risk management practices with respect to nontraditional mortgage products such as <u>the Option ARM products offered by the Bank</u>," the Proposed Defendants failed to do so (*id.* ¶ 24) (emphases added);

- "avers that . . . the Proposed Defendants . . . [gave] BUFC's board of directors a false impression of <u>the financial condition of</u> BUFC and <u>the Bank</u> . . ." (*id.* ¶ 25) (emphases added); and

- "seeks to recover . . . the damages suffered by BUFC as a consequence of the Proposed Defendants causing or permitting <u>unsafe and unsound practices</u> to be engaged in [<u>at the Bank</u>] that resulted in the <u>closure of the Bank</u>" (*id.* ¶ 29) (emphases added).

Had the Committee addressed the relevant standard in this jurisdiction for determining whether claims asserted by a holding company – whose primary asset is the failed subsidiary

---

(Footnote continued from prior page)
as CFO and director of both the Holding Company and the Bank. The Committee's assertion of ownership by the Holding Company's estate of claims for injury arising out of the Bank failure because of acts taken by the individuals wearing these multiple hats, if such assertion were accepted, would result in simultaneous, parallel suits against the same actors, for the same conduct, producing the same injury. FIRREA, *Southeast Banking Corp.* and the cases that followed implicitly recognized the wisdom of averting such an outcome, the consequences of which, particularly in the current era of such an unprecedented number of bank failures, are almost unthinkable.

bank – are derivative or direct, the outcome would be inescapable: its claims are derivative Bank claims <u>not</u> within the narrow "sliver" identified in *Southeast Banking Corp.*, 827 F. Supp. at 746.

## II.    *Lubin* Further Supports Dismissal of the Committee's Claims as Derivative Bank Claims.

The Committee attempts to rely upon *Lubin* to support its assertion that "even if the *Southeast Banking Corp.* case could be construed in the manner advocated by the FDIC, it would not afford persuasive support for the FDIC's position because it would be inconsistent with Eleventh Circuit precedent." (Motion ¶ 64.) Yet in *Lubin*, the Eleventh Circuit affirmed <u>dismissal</u> of <u>all</u> of the holding company trustee's claims against former bank and holding company officers. *See Lubin*, 2010 WL 2354141 at *1. It is an affront to the Eleventh Circuit to construe its decision as "undermin[ing] the FDIC's [alleged] expansive view of the claims that belong to the FDIC under FIRREA." (*See* Motion ¶ 42.)

The Committee appears to read meaning, where there is none, into the fact that the Court in *Lubin* (i) segregated and separately addressed the claims against the bank officers from the claims against the holding company officers, and (ii) concluded that the claims against the bank officers constituted derivative claims belonging to the FDIC, and that the generalized allegations against the holding company officers failed to sufficiently state a legal claim for breach of fiduciary duty. *Lubin*, 2010 WL 2354141 at **2-5.

### A.    The Facts and Ruling of *Lubin*

The facts of *Lubin* are key to understanding the illogic of the Committee's reasoning and its "misinterpretation" of the *Lubin* opinion. In *Lubin*, the holding company's trustee asserted claims against two former bank officers, one former holding company officer, and a former officer of both the bank and the holding company. *Id.* at *1. Despite the absence of overlapping roles for most of the defendants, the complaint failed to segregate its claims against the holding

company officers from those against the bank officers; instead, lumping the defendants together and generally alleging that "through mismanagement and risky lending practices, the defendants [,collectively,] harmed the Holding Company and endangered the capital it provided to the Bank." *Id.* Accordingly, the Court found it necessary to conduct separate analyses of the claims against the bank officers and those against the holding company officers. *Id.* at *2.

With respect to the claims against the bank officers, the court found that "it was the Bank officers' decisions to extend 'unreasonably risky and unlawful loans' that ultimately interfered with the 'proper management and profitable operation of the Bank'" resulting in harm to the holding company that is inseparable from the harm to the Bank. *Id.* at *4. Accordingly, the Eleventh Circuit concluded that the trustee "alleged a derivative claim disguised as a direct claim," and that such claims belonged exclusively to the FDIC pursuant to FIRREA.[2] *Id.* at *3.

With respect to the claims against the holding company officers (one of whom was also an officer of the bank), the Court in *Lubin* noted that the complaint only generally alleged that the officers "caus[ed], authoriz[ed], approv[ed], ratif[ied] or otherwise allow[ed] the Bank to persist in the deficient condition and unsound practices." *Id.* at *5. However, even after giving the trustee the benefit of the inference that the officers of the holding company had oversight responsibilities for the bank and were thus partly responsible for the bank's mismanagement, the Court dismissed the complaint as deficient for failure to sufficiently plead a breach of duty.[3] *Id.*

---

2  In fact, the Court expressly found that the reduction in the value of the holding company's investment in the bank, and the holding company's assumption of debt to finance the bank's operation, does not alter the fact that the harm to the holding company "is decidedly a derivative one." *Lubin*, 2010 WL 2354141 at *4.

3  The *Lubin* Court also noted, in *dicta*, that it would "express no opinion" as to whether the holding company officers might have breached their duties to the holding company under hypothetical allegations not pled in the complaint, such as by failing to inform the holding company's board about bank mismanagement and failing to influence the holding company to change the Bank's management. *Lubin*, 2010 WL 2354141 at *5. Even if the Court had opined that such hypothetical claims could potentially fall within a "sliver" of direct claims, it would

(Footnote continued on next page)

### B. <u>Analysis of *Lubin*</u>

There is no meaning to be found in the fact that, because most of the officers in *Lubin* did not have overlapping bank and holding company roles, the court separately analyzed the claims against each set of officers, ultimately dismissing <u>all</u> of the claims. Indeed, affirmative pronouncements in *Lubin* fatally undermine the Committee's efforts to characterize its claims against the CEO and CFO of both the Bank and Holding Company as independent direct claims, including the following:

- "The alleged harm to the Holding Company stems from the Bank officers' management of Bank assets. This harm is inseparable from the harm done to the Bank." (*Id.* at *4 (citations omitted).)

- "The Bank's insolvency . . . is what forced the Holding Company into bankruptcy. . . Thus, the Holding Company's harm, and even its ultimate bankruptcy, is derivative of the harm to the Bank." (*Id.*)

- "[A] direct claim is distinguishable from a derivative claim if the shareholder is 'injured in a way which is different from the other shareholders or independently of the corporation.'" (*Id.* at *3 (citation omitted).)

- "'It is the nature of the wrong alleged and not the pleader's designation or stated intention that controls the court's decision.'" (*Id.* (citations omitted).)

Thus, *Lubin* creates no affirmative law to assist the Committee here in trying to sustain, as independent direct claims, allegations asserted against the Proposed Defendants (who controlled both the Bank and the holding company) of mismanagement of the Bank resulting in the Bank's collapse, and derivatively, in injury to the Holding Company..

---

(Footnote continued from prior page)
have no bearing on the Committee's Proposed Claims. Whereas, in *Lubin*, providing the holding company's board with information as to the mismanagement of the bank might have arguably resulted in the Board changing the bank's management; such a result was an impossibility here for obvious reasons. Here, unlike in *Lubin*, there is complete overlap between the senior officers and directors of the Holding Company and the Bank. (*See* Adv. Pro. Dkt. No. 13, Exs. 1 at 12-15 & Ex. 2 at 26-30.) In fact, not only were the boards of directors mirror images, but Proposed Defendant Camner – who mismanaged the Bank, thereby harming the Bank and derivatively the Holding Company – was the Chairman of both boards of directors and the CEO of both entities. *Id.* at 27. Similarly, Proposed Defendant Lopez served as a director on both boards and as CFO of both entities. *Id.*

There is likewise no significance to the proposition stated in a footnote in the *Lubin* case, upon which the Committee repeatedly attempts to rely. (Motion ¶¶ 40, 59, 64.)[4] The *Lubin* Court noted that "where the Trustee is suing to vindicate the rights of the Holding Company against its own officers, FIRREA is not invoked." *Lubin*, 2010 WL 2354141 at *5 n.9. This general proposition that a trustee has standing to assert direct holding company claims does not "undermine" the FDIC-R's position. (*See, e.g.,* Motion ¶ 42.) To the contrary, the FDIC-R recognizes that, in accordance with *Southeast Banking Corp.*, there are a narrow sliver of holding company claims that might not fall under the ambit of FIRREA; however, those claims must be entirely unrelated to acts taken by, or harm to, the subsidiary bank. Moreover, if the footnote in *Lubin* meant, as the Committee seems to contend, that any claims asserted by a holding company trustee against its own officers for alleged breaches of their fiduciary duties to the holding company are necessarily direct claims, then there would be no reason for the Eleventh Circuit to have separately analyzed the claims against the holding company officers. In fact, there would then be no reason for any court to determine whether claims asserted against holding company officers are direct claims where the trustee simply alleges that such officers breached their duties to the holding company. As the *Lubin* court and other courts have held, "it is the nature of the wrong alleged and not the pleader's designation or stated intention that controls." *Lubin*, 2010 WL 2354141 at *3 (citation omitted); *see also Southeast Banking Corp.*, 827 F. Supp. At 745 ("Whether a claim is considered direct or derivative is a matter of state law, and is determined from the body of the complaint rather than from the label employed by the parties.").

---

[4] Curiously, the Committee also cites and quotes from the case of *FDIC v. Jenkins,* 888 F.2d 1537 (11th Cir. 1989), a well known Eleventh Circuit case on the issue of whether the FDIC could be accorded priority over claims by shareholders of a failed bank against third parties. (*See* Motion ¶ 64.) But that case did not address the issue at hand - determining whether claims against officers of the holding company and failed bank are direct or derivative bank claims - and is therefore not relevant.

Accordingly, the courts must analyze the claims as pled to determine whether the claims are derivative in nature.[5]

Here, as set forth more fully in the FDIC-R's Motion for Summary Judgment, each of the claims asserted in the Proposed Complaint against the former senior officers of the Bank and Holding Company are "substantially dominated by derivative allegations . . . [which] turn on acts taken by, and injury to," the Bank, and are thus derivative claims belonging exclusively to the FDIC-R pursuant to FIRREA. *See Southeast Banking Corp.*, 827 F. Supp. at 746. *See also generally, Lubin*, 2010 WL 2354141; *Lubin v. Cincinnati Ins. Co.*, 1:09-CV-1156-RWS, 2009 WL 4641765 (N.D. Ga. Nov. 30, 2009); *Lubin v. Skow*, No. 1:09-CV-1155-RWS, 2009 WL 4641761 (N.D. Ga. Nov. 30, 2009).

### III. The Committee Gains No Support From the New York Cases of *General Rubber* and its Progeny.

#### A. The *General Rubber* Case

The Committee asserts, without any explanation, that *General Rubber*, 215 N.Y. 18, 109 N.E. 96, renders the FDIC-R's position "unsupportable," and that "*Southeast Banking*'s reliability as authority supporting the FDIC's position is undermined by" and "totally

---

[5] Recognizing the deficiencies in its Proposed Claims, the Committee instead posits the following hypothetical, asserting that a claim based on such scenario would be a direct claim: an officer of both the holding company and its bank subsidiary breaches his duty of care to the holding company by neglecting his responsibility to purchase casualty insurance covering the assets of the company's subsidiaries, and the assets of its subsidiary bank are then destroyed in a fire. (Motion ¶ 44.) First, the hypothetical scenario bears no resemblance to the Committee's Proposed Claims which arise from mismanagement at the subsidiary bank level. Second, and in any event, under the relevant standard in this Circuit for determining direct versus derivative bank claims, the hypothetical breach of fiduciary duty claim is a classic derivative claim. *See Southeast Banking Corp.*, 827 F. Supp. 742. Even assuming *arguendo* that the holding company officer in the hypothetical did not have a corresponding duty as a bank officer to ensure that the insurance was purchased for the bank, the claim would not fall within the narrow "sliver" of direct claims articulated in *Southeast Banking Corp*. The hypothetical claim of failure to purchase casualty insurance resulting in injury to the subsidiary bank due to a fire at the bank "turns on . . . injury to" the subsidiary bank. Accordingly, even the Committee's irrelevant hypothetical fails to assert unique harm to the holding company that is separate and distinct from the harm to the subsidiary bank.

inconsistent with" *Southeast Banking Corp.*'s discussion of *General Rubber*. (Motion ¶¶ 48, 62, 63.) These conclusory assertions are directly contradicted by the *Southeast Banking Corp.* decision in which the old New York case is cited. The Florida district court in *Southeast Banking Corp.* (i) conducted its own direct-versus-derivative analysis, concluding that the vast majority of the claims were derivative claims belonging to the FDIC, and (ii) then went on to consider the motion to dismiss only with respect to the narrow "sliver" of direct claims relating to the holding company's acquisition of entities unrelated to the wholly owned bank. *Southeast Banking Corp.*, 827 F. Supp. at 746, 748. It was in this latter portion of the decision, when focusing only upon the few remaining direct claims, that the court addressed *General Rubber*. *See Southeast Banking Corp.*, 827 F. Supp. at 748. Specifically, the court cited to *General Rubber* for the general proposition that a holding company has standing to assert direct claims:

> A suit brought by a holding company against its own officers and directors for damages to the holding company arising from breaches of duties owed to the holding company has been long recognized as stating a direct cause of action.

*Id.* Accordingly, there is no "inconsisten[cy]" within the *Southeast Banking Corp.* decision, nor is there any "inconsisten[cy]" between "the *Southeast Banking* court's [alleged] endorsement of the holding in the *General Rubber* case" and "the contention that *Southeast Banking* firmly undergirds the position espoused by the FDIC[-R]." (*See* Motion ¶¶ 62, 63.)

Indeed, the *General Rubber* case did not even address the issue of direct versus derivative claims because the claim by the holding company against its own director who was not an officer or director of the subsidiary, and who was not even alleged to have been directly responsible for the subsidiary's injury, was clearly a direct claim. In *General Rubber*, it was a non-party – the subsidiary's general manager – who committed the wrong to the subsidiary, which he controlled, by misappropriating money from it for the benefit of a rival company of which he was also

61090207_4

general manager. *General Rubber,* 215 N.Y. at 20-22. The holding company defendant was vice-president and part owner of the rival company, and was alleged to have known of the misappropriation. The gravamen of the claim by the holding company against its director was his knowledge of, and acquiescence in, the non-party's misappropriation for his own benefit, and his concealment of the misappropriation from the holding company upon whose board he served. *Id.* at 21-23. The claim was thus implicitly regarded as direct, focusing upon the defendant's "duty to the [holding company]" of which he was a director, and upon the harm to the holding company as a result of the conduct of the third party manager of the subsidiary. *Id.* at 22.

In stark contrast, here, the Proposed Claims are against the two most senior officers (and directors) of both the Holding Company and its subsidiary Bank for mismanagement of the Bank, resulting in injury to the Bank (i.e., the Bank's closure), and derivatively to the Holding Company (i.e., the Holding Company's bankruptcy). The Bank was the Holding Company's "primary subsidiary and most valuable asset" (Proposed Compl. ¶ 171), and unlike in *General Rubber,* the Holding Company existed virtually for no reason other than to hold the Bank. Accordingly, and significantly, the failure of the Bank necessarily meant the failure of its Holding Company. (*See, e.g.* Proposed Compl. ¶¶ 8, 148); *see also Lubin,* 2010 WL 2354141 at *4 (the subsidiary bank's "insolvency . . . is what forced the [h]olding [c]ompany into bankruptcy"); *Brandt v. First Union Corp.,* No. 94-1803-civ-HURLEY, slip op. at 11a (S.D. Fla. Apr. 24, 1995) ("the dimunition of [the holding company's] share value . . . was suffered only as a result of injuries to [the subsidiary] [b]ank"); *Southeast Banking Corp.,* 827 F. Supp. at 746 ("[t]here is no meaningful distinction between injury suffered by the holding company and the derivative claims of mismanagement, especially where [the holding company's] solvency and success were 'crucially dependent' on the Bank . . . ."). The claims at issue here are therefore

61090207_4

derivative Bank claims owned exclusively by the FDIC-R, and there is no disharmony between *General Rubber* and *Southeast Banking Corp.*

### B.     The *Ochs v. Simon* Case

Similarly, the Committee gains no support from *Ochs v. Simon (In re First Central Financial Corp.)*, 269 B.R. 502 (Bankr. E.D.N.Y. 2001), the alleged *General Rubber* progeny discussed at length in the Committee's Motion. (*See* Motion ¶¶ 50-56.) In *Ochs*, the bankruptcy trustee of a holding company, one of whose multiple subsidiaries was in liquidation by the New York Superintendent of Insurance, asserted direct claims against the holding company's directors and officers, a third of whom were not officers or directors of the subsidiary in liquidation. *Ochs*, 269 B.R. at 507-08, 517. Specifically, the trustee claimed that the holding company's own directors and officers damaged the holding company by, *inter alia*:

- acquiescing in a self-interested transaction with the holding company;

- misappropriating holding company assets;

- causing the holding company to enter into agreements for their sole benefit;

- delaying the filing of the holding company's bankruptcy until it was rendered insolvent; and

- mismanaging and operating the holding company and its multiple subsidiaries for their own benefit.

*Id.* at 514. These are the types of claims that *Southeast Banking Corp.* may well have considered within the "sliver" of permissible direct claims because they (i) were asserted against holding company officers, some of whom were not even officers or directors of the subsidiary at issue, (ii) arise from self-dealing and other wrongful conduct at the holding company level which was entirely unrelated to the subsidiary at issue, and (iii) resulted directly in harm to the holding

company, which harm was unique and distinct from any harm to the one subsidiary at issue (i.e., misappropriation of holding company assets).

In contrast, the Proposed Claims and circumstances here are fundamentally different from the claims and circumstances in *Ochs*. Here, the Proposed Claims (i) are asserted against the CEO and CFO of both the Bank and the Holding Company, (ii) arise from conduct and mismanagement at the Bank level with respect to the Bank's Option ARM portfolio (not, as in *Ochs*, from self dealing which caused unique harm to the Holding Company); and (iii) such mismanagement directly caused the Bank's failure, and derivatively, the Holding Company's bankruptcy. In addition, as in *General Rubber*, the success of the holding company in *Ochs* was not, in the language of *Southeast Banking Corp.*, "crucially dependent" on the success of the one subsidiary. In fact, as the *Ochs* court opined, "it is possible that, even if [the subsidiary] was insolvent at the relevant times, the Trustee will be able to show that, if [the holding company's] directors had properly performed their fiduciary duties, the [holding company] could have been restored to a sound financial footing." *Id.* at 514.

## CONCLUSION

For the foregoing reasons, the FDIC-R respectfully requests that this Court deny the Committee's Motion for Summary Judgment, grant the FDIC-R's Motion for Summary Judgment, and declare that the claims in the Committee's Proposed Complaint are derivative and belong exclusively to the FDIC-R.

Dated: August 2, 2010                           Respectfully Submitted,

| McDERMOTT WILL & EMERY LLP<br>Bruce J. Berman<br>Fla. Bar # 159280<br>201 South Biscayne Boulevard, Suite 2200<br>Miami, FL 33131-4336<br>Tel.: 305.358.3500<br>Fax.: 305.347.6500<br><br>Geoffrey T. Raicht<br>340 Madison Avenue<br>New York, New York 10173-1922<br>Tel.: 212.547.5400<br>Fax.: 212.547.5444 | HUGHES HUBBARD & REED LLP<br><br>By: __/s/ *Aviva L. Wernick*__<br>Dennis Klein<br>Aviva L. Wernick<br>Fla. Bar # 0697281<br>Ross C. Paolino<br>Fla. Bar # 0056688<br>201 South Biscayne Boulevard, Suite 2500<br>Miami, Florida 33131-4332<br>Tel: 305.358.1666<br>Fax: 305.371.8759 |

*Co-Counsel for the Federal Deposit Insurance Corporation*

61090207_4

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 2, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail on those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: __s/Bruce J. Berman_____
Bruce J. Berman

## Service List of USDC Case 10-03075-LMI

**Electronic Mail Notice List**

The following is the list of parties who are currently on the list to receive e-mail notice/service for this case:

Corali Lopez-Castro on behalf of Plaintiffs
clc@kttlaw.com, rcp@kttlaw.com

Todd C. Meyers on behalf of Plaintiffs
tmeyers@kilpatrickstockton.com, skapoor@kilpatrickstockton.com

**Manual Notice List**

The following is the list of parties who are not on the list to receive e-mail notice/service for this case, and are therefore being served by first class U.S. Mail, postage prepaid:

(no manual recipients)