

**ORDERED in the Southern District of Florida on November 15, 2010.**

                                               **Laurel M. Isicoff, Judge**
                                               **United States Bankruptcy Court**

Tagged Opinion

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: | CASE NO. 09-19940-BKC-LMI |
| BANK UNITED FINANCIAL CORPORATION, et al., | Chapter 11 |
| | Jointly Administered |
| Debtors. _____/ | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF BANKUNITED FINANCIAL CORPORATION, | ADV. CASE NO. 10-3075-BKC-LMI |
| Plaintiff, | |
| vs. | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for BankUnited, FSB, | |
| Defendant. _____/ | |

**ORDER GRANTING IN PART AND DENYING IN PART
CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter came before the Court on cross-motions for summary judgment filed by the

Plaintiff, the Official Committee of Unsecured Creditors of BankUnited Financial Corporation

("Committee or Plaintiff") (DE # 14 ) and by the Federal Deposit Insurance Corporation as

Receiver for BankUnited, FSB ("FDICR or Defendant") (DE # 12).  The issue in this case is who owns the causes of action against two common former officers of BankUnited, FSB (the "Bank") and BankUnited Financial Corporation (the "Holding Company" or the "Debtor").  The two proposed defendants are Alfred R. Camner, the former chief executive officer of the Holding Company and of the Bank and the former Chairman of the Board of the Holding Company and of the Bank, and Humberto L. Lopez, the former Chief Financial Officer of the Holding Company and of the Bank (collectively, the "Proposed Defendants").

The FDICR argues that any claims that the Holding Company seeks to assert against the Proposed Defendants are derivative claims and therefore belong exclusively to the FDICR.  The Committee argues that the claims it is asserting against the Proposed Defendants are direct claims which the Holding Company, and therefore the Committee on behalf of the Holding Company[1], may bring.  The Court has considered the Complaint and its attachments, including the proposed complaint attached as Exhibit A to the Complaint (the "Proposed Complaint"), the motions filed by the respective parties, their respective responses, replies, and in the case of the FDICR, its sur-reply.  The Court has also considered argument of counsel, as well as applicable statutory and case law. For the reasons set forth below, this Court grants summary judgment in favor of the FDICR with respect to Counts I and III of the Proposed Complaint and grants summary judgment to the Committee with respect to Count II of the Proposed Complaint.

## THE FALL OF BANKUNITED

On May 21, 2009, the Federal Deposit Insurance Corporation (the "FDIC") took over the Bank.  The Bank's "good" assets were sold to BankUnited, a newly chartered federal savings bank, and the balance of the assets was transferred to FDICR, including "(b) any interest, right,

---

[1] The Committee is litigating this issue on behalf of the estate pursuant to the Court's Order Granting, as Modified, the Committee's Motion for Derivative Standing (DE #279 in the main bankruptcy case, no. 09-19940-BKC-LMI).

claim, or judgment against (i) any officer, director, employee, accountant, attorney, or any other Person employed or retained by the Failed Bank or any Subsidiary of the Failed Bank." (Purchase and Assumption Agreement Among FDICR, FDIC, and BankUnited Dated as of May 21, 2009 (the "Purchase and Assumption Agreement") at pp. 13-14).[2] The next day, May 22, 2009, the Holding Company and two of its subsidiaries - BankUnited Financial Services, Incorporated and CRE America Corporation - each filed for protection under Chapter 11 of the United States Bankruptcy Code.[3]

The Holding Company is the sole shareholder of the Bank. Prior to the FDIC closure of the Bank, the Bank and the Holding Company each had a board of directors. The membership on each of the boards was, apparently, identical. Each member of each of the boards is a named beneficiary under a single Directors' and Officers' liability policy (the "D & O Policy").

On August 31, 2009, the Committee filed its Motion for Derivative Standing to Investigate, Assert and Prosecute Claims Against Officers, Directors, and Prepetition Professionals (DE #228). This Motion was opposed by the FDIC, who argued that the only claims the Debtor could possibly assert against directors and officers were derivative claims, which could only be brought by the FDICR, and therefore, any investigation would be a waste of estate resources (DE #252). On September 29, 2009, this Court granted the Committee's Motion, granted the Committee derivative standing and authorized the Committee to investigate potential claims against former officers and directors (DE #279). On November 24, 2009, the FDIC filed its Motion to Enforce the Order Granting, as Modified, Committee's Motion for Derivative Standing to Investigate, Assert and Prosecute Claims Against Officers, Directors and Prepetition Professionals (DE #373), arguing that, by virtue of various demand letters sent by the

---

[2] The Purchase and Assumption Agreement was reprinted from the FDIC website, http://www.fdic.gov/bank/individual/failed/bankunited.html (last visited on November 12, 2010).
[3] The three cases are being jointly administered.

3

Committee to former officers and directors, it was clear the Committee was pursuing only derivative claims and the Committee should not be allowed to proceed. After considering the FDIC's motion, the various responses to the motion, and conducting a lengthy hearing, this Court ruled, for the reasons stated on the record, that without the benefit of seeing an actual complaint, the Court was unwilling (and pursuant to case law cited at the hearing, unable) to determine whether any or all claims asserted by the Committee were derivative rather than direct. Thus, the Court denied the FDIC's motion (DE # 426).[4] The Court invited the Committee either to file the actual complaint and let the presiding judge rule on the direct/derivative issue once the complaint was filed, or to file a declaratory action attaching a proposed complaint which proposed complaint would then be considered for purposes of determining whether the Committee could bring the claims asserted therein. The Committee chose the latter option.

The parties agree that the determination of whether the Proposed Complaint sets forth causes of action that only the FDICR can bring is a matter to be determined on summary judgment.

## JURISDICTION AND VENUE

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334. The adversary claim is a core proceeding under 28 U.S.C. §157(b)(2). Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. §1409.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure is applicable to this adversary proceeding by virtue of Fed. R. of Bankr. P. 7056. Summary judgment is appropriate where the "pleadings,

---

[4] The FDIC appealed this order but the appeal was later dropped, presumably because the Committee filed this declaratory action.

4

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If there are no material facts in dispute, and only a purely legal question remains to be decided by the court, then granting summary judgment is appropriate. *See, e.g., Neff v. American Dairy Queen Corp.*, 58 F.3d 1063 (5th Cir. 1995) (finding summary judgment appropriate when there were no material facts in dispute); *United States v. Reader's Digest Ass'n*, 662 F.2d 955, 961 (3d Cir. 1981) (noting that interpreting the provisions of a consent order was a question of law and therefore, appropriate for summary judgment).

## DERIVATIVE OR DIRECT or DERIVATIVE AND DIRECT?

There is no dispute that only the FDICR may bring derivative claims arising from the failure of the Bank. *Lubin v. Skow*, 2010 WL 2354141, at *3 (11th Cir. June 14, 2010). The FDICR argues that a derivative claim is any claim brought by the shareholder of a failed bank which claim arises from the failure of the bank. The Committee argues that the failure of the bank is not what causes a shareholder's claim to be derivative, but rather the nature of the cause of action and the alleged harm to the shareholder.

There is also no dispute that whether a claim is derivative or direct is a question of state law. *Lubin*, 2010 WL 2354141, at *2-3, n.6; *Brandt v. Bassett (In re Southeast Banking Corp.)*, 827 F. Supp. 742 (S.D. Fla. 1993); *rev'd in part on other grounds*, 69 F.3d 1539 (11th Cir. 1995). Under Florida law, whether a shareholder's claim is derivative or direct is based on "the nature of the injuries alleged and the wrongs sought to be remedied." *Alario v. Miller*, 354 So.2d 925, 926 (Fla. 2d DCA 1978). The Florida Second District Court of Appeal described the demarcation:

5

> [A] derivative suit [is defined] as an action in which a stockholder seeks to enforce a right of action existing in the corporation … Conversely, a direct action, or as some prefer, an individual action, is a suit by a stockholder to enforce a right of action existing in him … [A] stockholder may bring a suit in his own right to redress an injury sustained directly by him, and which is separate and distinct from that sustained by other stockholders. If, however, the injury is primarily against the corporation, or the stockholders generally, then the cause of action is in the corporation and the individual's right to bring it is derived from the corporation.

*Id.* (internal citations omitted).  See *Fox v. Professional Wrecker Operators of Florida, Inc.*, 801 So.2d 175 (Fla. 5th DCA 2001); *Ft. Pierce Corp. v. Ivey*, 671 So.2d 206 (Fla. 4th DCA 1996); *Provence v. Palm Beach Taverns, Inc.*, 676 So.2d 1022 (Fla. 4th DCA 1996). The *Alario* court held that a corollary of what constitutes a derivative action is "the corporation on behalf of which the stockholders sue is an indispensable party, and the court has no jurisdiction to adjudicate the rights of that corporation in its absence as a party. …" 354 So.2d at 927.

The same series of facts can give rise to both direct and derivative claims. *Garner v. Pearson*, 374 F. Supp. 580, 585 (M.D. Fla. 1973) (citing to *Borak v. J.I. Case Co.,* 317 F.2d 838 (7th Cir. 1963)).  Whether a claim is considered to be direct or derivative is determined from the body of the complaint rather than the label employed by the parties. *Id.; Lubin*, 2010 WL 2354141, at *4; *Alario*, 354 So.2d at 926.

This demarcation is simpler to identify when the shareholder of a corporation is an individual.  In such an instance, the court need focus only on the activity of the directors and officers and the claims of the shareholder and determine whether the nature of the claims are unique to the shareholder or are actually claims that belong to the corporation itself.  *See, e.g., Popkin v. Jacoby (In re Sunrise Secs. Litig.)*, 916 F.2d 874 (3d Cir. 1990) (under Florida law, suit by depositors in a failed bank (whom the court likened to shareholders) in action for breach of fiduciary duty against officers and directors of a failed bank for mismanagement that resulted in

6

the insolvency of the bank and the loss of the depositor's investment, was a derivative claim); *Wolfe v. American Savings & Loan Ass'n.,* 539 So.2d 606 (Fla. 3d DCA 1989) (individual shareholder suit against director and officers of corporation for decrease in value of preferred stock caused by merger that altered convertibility feature of preferred stock was a direct action); *Alario*, 354 So.2d 925 (suit by shareholders of a subsidiary corporation against an individual who was an officer and director of both the subsidiary and a corporate shareholder of the subsidiary for alleged breaches that rendered the subsidiary insolvent and the investors' stock worthless was a derivative action). *Accord Braun v. Buyers Choice Mortgage Corp.*, 851 So.2d 199 (Fla. 4th DCA 2003) (claim that director of corporate stockholder breached fiduciary duty to the subsidiary corporation by selling the corporate parent should have been brought as shareholder derivative claim rather than direct claim by individual shareholder as all shareholders, not just the corporate shareholder, would have been equally harmed by the alleged breach (assuming there even was a duty to the subsidiary corporation)); *Checkers Drive-In Restaurants, Inc. v. Tampa Checkmate Food Services, Inc.*, 805 So.2d 941 (Fla. 2d DCA 2001) (shareholder of franchisee corporation could not recover individually under Florida Franchise Act, where violation of the Act caused direct injury to franchisee corporation, but only indirect injury to shareholder); *AmSouth Bank v. Wynne*, 772 So.2d 574 (Fla. 1st DCA 2000) (individual shareholders did not have direct claims against bank for fraud as injuries complained of (losses caused by false or negligent responses to confirmation letters) were injuries caused to the corporation).

The waters get muddied, however, when the shareholder of a corporation is a corporation as well. Each director and officer owes fiduciary duties to the respective corporation that he or she serves. Fla. Stat. §§607.0830, 607.0831; *In re Aqua Clear Technologies, Inc.*, 361 B.R. 567,

7

575 (Bankr. S.D.Fla. 2007); *Garner*, 374 F.Supp. at 585.  This obligation does not change even if the shareholder and the subsidiary have common boards.  *See Ochs v. Simon (In re First Central Fin. Corp.)*, 269 B.R. 502, 512 (Bankr. E.D.N.Y. 2001) ("Individuals who act in a dual capacity as directors of two corporations, one of whom is parent and the other subsidiary, owe the same duty of good management to both corporations, …") (quoting *Weinberger v. DOP, Inc.*, 457 A.2d 701, 710-11 (Del. 1983)); *see also Garner*, 374 F. Supp. 580 at 584.  The issue created by this dual duty when trying to analyze whether a cause of action by a corporate parent against a board member of either the parent or the subsidiary is direct or derivative is how to determine whether the officer or director breached his or her duty to the subsidiary, to the parent, or both.  When the officers and directors are separate, the demarcation is easier to analyze.  However, when the directors and officers of the parent and subsidiary corporations are common, the analysis becomes much more complex.  In what capacity is the individual being sued – in his or her capacity as a director of the subsidiary, the holding company, or both?  Moreover, did the actions complained of breach a duty to the subsidiary, the holding company, or both?

Relying on the *Southeast Banking Corp.* case the FDIC argues that "(i) . . . all bank-related claims are derivative and belong exclusively to the FDIC, as bank receiver, and (ii) . . . that bank holding companies could have, at best, only the merest 'sliver' of claims belonging to them, because such claims would have to be for injury to the holding company wholly distinct from, and unrelated to, claims for injury to its subsidiary bank."  (DE #12 at p. 3).  In the *Southeast Banking Corp.* case, Mr. Brandt, as bankruptcy trustee for Southeast Banking Corporation, a bank holding company, sued officers and directors of the holding company's

8

subsidiary bank,[5] for breach of legal duties, negligence, gross negligence and conscious disregard of the best interests of the holding company." 827 F. Supp. at 744.

The district court held that, based on Florida corporate law in the complaint that was before it at the time, those claims for injury suffered by the holding company for mismanagement at the bank level, "especially where [the holding company's] solvency and success were 'crucially dependant' on the Bank …," were derivative and could not be brought by the holding company's bankruptcy trustee. *Id.* at 746. However, the court noted the existence of a "sliver" of possible direct claims alleged in the complaint, arising from the purchase of, and dividends associated with, two other failed thrifts. *Id.* The court noted that the trustee made no other allegations in the complaint "taken at the holding company, rather than the Bank, level." *Id.* However, the district court rejected the FDIC's argument that all the claims raised by the trustee belonged to the FDIC as receiver of the failed bank. *Id.* (citing to *FDIC v. Jenkins*, 888 F.2d 1537 (11th Cir. 1989). The district court noted that the Eleventh Circuit had specifically rejected the FDIC's attempts to gain priority over bank shareholders against former directors, officers and professionals for non-derivative claims arising from a bank failure. *Id.* This, of course, implicitly, if not explicitly, recognizes non-derivative claims <u>can</u> arise from a bank failure.

The district court then turned to the apparent direct claims alleged in the complaint. Citing *General Rubber Co. v. Benedict*, 215 NY 18, 109 N.E. 96 (1915) (Cardozo, J.), the court wrote, "[a] suit brought by a holding company against its own officers and directors for damages to the holding company arising from breaches of duties owed to the holding company has been long recognized as stating a direct cause of action." *Southeast Banking Corp.*, 827 F. Supp. at

---

[5] Although not explicitly stated, apparently these same officers and directors were officers and directors of the holding company.

9

748 (emphasis in the original).[6] The district court also referred to *Garner*, 374 F. Supp. 580, where that court, also citing to *General Rubber*, held that, under Florida law, a suit by a liquidator of a holding company against the holding company's officers and directors was direct when the allegations were based on breach by these fiduciaries of their duties to the holding company. *Id.* at 748-49.

Based on the *Southeast Banking Corp.* case, which the FDICR argues is binding precedent on this issue of direct versus derivative[7], the FDICR argues that, in every case where a bank holding company has suffered injuries due to a bank failure, any claims by the holding company caused by that failure can only be derivative claims, at least where the boards have the same, or almost the same, constituency.[8] The FDICR argues that courts need a simple test to resolve the direct versus derivative issue and that the facts of this case present the ideal "test case." However, this "test" suggested by the FDICR is both overly simplistic and not supported

---

[6] In *General Rubber*, then Judge Cardozo considered the issue of whether the director of a holding company breached his fiduciary duty to the holding company when he failed to mention to its board that the president of a wholly owned subsidiary was stealing money from the subsidiary. 215 N.Y. at 18. The defendant was not an officer of director of the subsidiary. Judge Cardozo rejected the defendant's argument that he might also be found liable to the subsidiary for theft (since the siphoned funds went to a company he controlled), thereby causing the director to pay twice for the same loss. Cardozo was not swayed.

[7] The case was overturned for other reasons. As the Court has previously noted, there is a debate whether a bankruptcy court is bound by the holdings of a district court. *Compare Health Services Credit Union v. Shunnarah (In re Shunnarah)*, 273 B.R. 671 (M.D. Fla. 2001) (finding bankruptcy courts are "inferior" and bound by published district court opinions, unless an opinion that contains a different holding is published), *with In re Romano,* 350 B.R. 276 (Bankr. E.D. La. 2005) (holding a single decision of a district court in a multi-judge district is not binding upon a bankruptcy court in the district). In the absence of direction from the Eleventh Circuit to the contrary, this Court finds that, at least in non-single court districts such as the Southern District of Florida, district court opinions may be persuasive, but they are not binding precedent.

[8] In its Motion for Summary Judgment, the FDICR seems to suggest that a bank holding company that serves no other purpose than to hold the stock of a bank is an artifice to circumvent congressional intent to "uniformly administer the assets of failed institutions through a single governmental entity: the FDIC." This argument is overbroad. A bank holding company has its own separate obligations to its shareholders, whatever are its holdings. *Accord MCorp Financial, Inc. v. Board of Governors Federal Reserve System of the United States*, 900 F.2d 852, 863 (5th Cir. 1990), *aff'd in part, rev'd in part*, 502 U.S. 32 (1991) (a transfer of funds from a bank holding company to its troubled subsidiary bank mandated by the Federal Reserve Board "would require [the holding company] to disregard its own corporation's separate status; it would amount to a wasting of the holding company's assets in violation of its duty to its shareholders. Also, one of the fundamental purposes of the [Bank Holding Company Act] is to separate banking from commercial enterprises. That purpose is obviously not served if the Board is permitted to treat a holding company as merely an extension of its subsidiary bank.")

by law.  First, if it were so simple to differentiate between direct and derivative claims, then the Eleventh Circuit in *Lubin*[9] would have written a very different opinion.  In *Lubin*, the Eleventh Circuit considered a complaint filed by the bankruptcy trustee of a failed bank holding company against individuals who were officers of the holding company and of the bank.  The FDIC claimed "sole ownership" of the claims against the defendants.  If the FDIC's test were the correct test, then the Eleventh Circuit in *Lubin*, although admittedly applying Georgia corporate law, would have held that, as all the claims against the defendants were caused by the bank's failure, the FDIC's motion should be granted.  Rather, the Eleventh Circuit examined the allegations of the complaint and wrote "if the Trustee can establish a direct harm to the Holding Company caused by the Bank officers,[10] that harm would be separate from the derivative harm.  If the Trustee were seeking to enforce such a claim, FIRREA would not be a bar to standing."  2010 WL 2354141, at *3.  The Eleventh Circuit held that the harm allegedly caused to the holding company by the officer's mismanagement at the bank level was derivative as "[t]his harm is inseparable from the harm done to the Bank."  *Id.* at *4.  However, the court also noted that it could be possible for the trustee to bring direct claims where those claims alleged a breach of the officer's duties to the holding company separate from his or her breach of duty to the bank.  *Id.*

Second, the FDICR cannot articulate a reason that, at the pleading stage, one could or should differentiate the nature of a claim when common boards are involved rather than diverse boards.  If a plaintiff can successfully demonstrate that an officer of a holding company breached his or her fiduciary duty to the holding company, then it should not matter that the same officer

---

[9] The Court recognizes that *Lubin v. Skow* was not selected by the Eleventh Circuit for publication and therefore is of limited precedential value.  However, this opinion is the most recent, and perhaps the best example of how the Eleventh Circuit views these issues.

[10] In many opinions, *see*, *e.g. Southeast Banking Corp.*, the court conflates the holding company and bank roles of the defendants.  What is clear in the *Lubin* opinion is the Eleventh Circuit is referring to the common officers.

may also be an officer of a failed subsidiary or that he or she also breached his or her fiduciary duty to the failed subsidiary. The focus must be on the nature of the act, or failure to act, as well as the injury caused, and not solely on who is the actor.

This was the precise issue faced by the bankruptcy court in the *First Central Financial Corp.* case. In the *First Central Financial Corp.* case the debtor in bankruptcy was a holding company of a failed insurance company. 269 B.R. at 506. The failed insurance company subsidiary was in liquidation under the control of the Superintendent of Insurance of the State of New York (the "Superintendent"). *Id.* The holding company's chapter 7 trustee filed suit against the former officers and directors of the holding company for, among other causes of action, mismanagement and breach of fiduciary duty. *Id.* Ten of the fifteen defendants were officers of both the insurance company and the holding company. *Id.* The complaint alleged that the officers of the holding company breached their duty to the holding company "by committing waste and mismanagement of corporate assets committed to their charge, including waste and mismanagement arising out of their management and control of the [holding company] and its wholly-owned subsidiaries." *Id.* at 507.

The Superintendent sought dismissal of the trustee's complaint contending that most, if not all, of the claims raised by the trustee were derivative, based on the insurance company's failure, and not direct. *Id.* at 508. Therefore, only the Superintendent, as liquidator for the insurance company, could bring the action. *Id.* Citing to the *General Rubber* decision, Judge Craig rejected the Superintendent's argument, observing that the trustee's complaint "is seeking redress against [the holding company's] officers and directors for damages to [the holding company] caused by their alleged breaches of fiduciary duty owed to [the holding company]."

269 B.R. at 509. Judge Craig also dismissed the Superintendent's argument that the overlap of directors and officers was significant in some way:

> Let us consider the situation where there are two corporations; parent and subsidiary. Each has one director and they are different individuals. The director at the subsidiary level engages in waste and mismanagement. The director at the parent level knows about this and acquiesces in it. Subsequently, the parent company files for bankruptcy and the trustee of the parent company sues the officers and director of the parent company in an action for breach of fiduciary duty, and failure to adequately supervise the management of the subsidiary, which he has a fiduciary duty to the parent company to do.
>
> Clearly, under *General Rubber*, the parent company has a cause of action against its own director for breach of fiduciary duty for failure to 'take [ ] the same care of its property that men of average prudence take of their own property' … It is equally clear that the subsidiary has a cause of action against its own director for waste and mismanagement. One of these causes of action does not disappear merely because the director of the two corporations is the same person.

*Id.* at 512-513 (citations omitted).

Nonetheless, the Court agrees with the FDICR that a test is needed. Based on the case law that has addressed these tensions, this Court holds that the test to determine whether a claim brought by a bank holding company against officers and directors of the holding company, who also happen to be officers of a failed corporate subsidiary, is a direct claim or a derivative claim is a two-part inquiry. First, does the complaint state a cause of action for breach of fiduciary duty by the holding company officer or director to the holding company. Second, if the act or failure to act could also be viewed as a breach of duty to the subsidiary by the same person in his or her capacity as a director or officer of the subsidiary, is the injury alleged to have been caused by the breach one that could only occur at the parent level or is it a harm shared with, or occurring solely at, the subsidiary level. If the answer to either of these questions is "no," then the claim being pursued is a derivative claim. However, if the answer to both of these questions is "yes," then the claim is direct.

**THE PROPOSED COMPLAINT – A BIT OF BOTH**

Based on this test, the Court finds that the FDICR is entitled to judgment in its favor with respect to Counts I and III of the Proposed Complaint and the Committee is entitled to judgment in its favor with respect to Count II of the Proposed Complaint.  The Proposed Complaint has three counts.  Count 1, entitled "Failure to Implement and Maintain Effective Risk Management Procedures and Internal Controls – Breach of Duty of Care," seeks recovery against the Proposed Defendants for the alleged breach of their fiduciary duty to the Holding Company by failing to, among a myriad of failures, exercise vigilant control and attention to the financial accounting and reporting of the Holding Company and its subsidiaries, including the Bank, and failing to make sure the Bank was managed properly.  (Proposed Compl. at ¶¶ 167-69).  These breaches of fiduciary duty, according to the Proposed Complaint "damaged the Holding Company in amounts to be proven at trial by causing a diminution in value of the Holding Company's interest in its primary subsidiary and most valuable asset – the Bank – which was placed in receivership, causing the Holding Company to declare bankruptcy."  (*Id.* at ¶ 171).

Count II, entitled "Failure to Provide Accurate and Complete Information to the Holding Company's Board – Breach of Duty of Care," seeks recovery from the Proposed Defendants for the alleged breach of their fiduciary duty by, in summary, failing to provide complete and accurate disclosures to the Holding Company Board regarding the financial condition of the Holding Company and its subsidiaries, and the various reporting inaccuracies and inadequacies that ultimately led to the Bank's downfall.  (*Id.* at ¶ 175).  The damages resulting from these alleged breaches were (1) $34 million that the Holding Company spent to repurchase some of its Common Stock, (2) the payment of $2,013,000 in dividends, and (3) "the improvident incurrence

14

by the Holding Company of debt in 2007, which artificially prolonged the Holding Company's existence and caused it to incur additional losses." (*Id.* at ¶ 178).

Count III of the Proposed Complaint, entitled "Failure to Provide the Holding Company's Board With All Reasonably Available Information Relevant to Whether to Authorize the August 2008 $80 Million Capital Contribution and a Reasonable Opportunity to Consider Whether Such Capital Contribution Should be Made – Breach of Duties of Loyalty and Care," seeks recovery against Mr. Camner only, for allegedly breaching his duty of loyalty to the Holding Company by failing to provide its board of directors with all relevant and necessary information it needed to determine whether it was appropriate for the Holding Company to make a capital contribution of $80 million to the Bank, the value of which, when the Bank was seized by the FDIC, was lost. (*Id.* at ¶ 181-84). That $80 million loss is the claimed damages in Count III. (*Id.* at ¶ 185-86).

In each of the three counts the Committee has alleged acts or failures to act by Mr. Camner or Mr. Lopez which would, if proven, appear to state a claim for breach of fiduciary duty to the Holding Company.[11] However, in two of the three counts, the injury alleged is clearly one which Florida courts, or federal courts applying Florida law, have held is derivative and not direct.

Count I of the Proposed Complaint alleges the damage caused by the alleged breach is "diminution in value of the holding company's interest in its primary subsidiary." While, in the absence of a common board, such injury might be direct, *see, eg., General Rubber*, where there is a common board, or where the shareholder is an individual, the Courts have held that such a

---

[11] The issue before the Court is neither whether Mr. Camner or Mr. Lopez actually breached their fiduciary duty to the holding company, or to the Bank, nor whether, under applicable Florida law or the corporate governance documents, these allegations actually support a claim for breach of fiduciary duty. *See First Central Financial Corp.*, 269 B.R. at 515. The focus of this Court's ruling is whether, assuming the allegations of the Proposed Complaint state a cause of action, the cause of action is direct or derivative. Accordingly, this Court will focus on the injury allegedly caused by the breach. Another court or courts shall determine whether and to what extent a breach of fiduciary duty occurred.

claim is derivative. *See In re Sunrise Secs. Litig.,* 916 F.2d 874; *Alario v. Miller*, 354 So.2d 925. C*f. Lubin v. Skow*, 2010 WL 2354141 (applying Georgia law). Accordingly, as Count I of the Proposed Complaint alleges an injury based solely on loss due to the Bank, this Count sets forth a derivative claim and may only be brought by the FDICR on behalf of the Bank.

Count II seeks recovery for damages to the Holding Company arising from the Holding Company's stock repurchase, the payment of dividends and "the improvident incurrence by the holding company of debt[12]." (Proposed Compl. at ¶ 178). Funds expended by the Holding Company that would not have been spent, including the dividends and stock repurchase, are damages unique to the Holding Company. These are not claims the Bank would bring or injury the Bank would or could suffer. Accordingly, the Court finds that the cause of action described in Count II of the Proposed Complaint is a direct claim.

Count III alleges injuries from the futile and ill advised $80 million capital contribution. This loss, like the loss described in Count I, is tied completely to the failure of the Bank, an injury suffered by the Bank. *Accord Lubin,* 2010 WL 2354141, at *4 (applying Georgia corporate law, the court held that the holding company's loss of $34 million due to its assumption of debt to finance the failed bank's operations, was derivative of the harm to the bank, even though the bank's inability to repay the $34 million caused the holding company's bankruptcy). Accordingly, the Court finds that Count III of the Proposed Complaint is a derivative claim.

## CONCLUSION

A failed bank, a bankrupt holding company, and a single D&O policy - it is a recipe for litigation between those starving fiduciaries scrounging through the remnants of assets for scraps

---

[12] This "incurrence of debt" appears to be separate from the $80 million capital contribution described in Count III of the Proposed Complaint.

of creditor recovery. This case is no exception. A great deal of time and effort has been spent arguing who gets to chase after the alleged bad guys. Hopefully now the turf war will end and each of the Committee and the FDICR can move forward towards a tangible benefit for their respective constituencies. The parties are directed to prepare a Final Judgment consistent with this opinion.

# # #

Copies furnished to:
Todd Meyers, Esq.
Geoffrey Raicht, Esq.